IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff-Respondent,<br><br>   v.<br><br>TALOA LATU,<br><br>               Defendant-Petitioner. | CR. NO. 17-00364 JMS<br>CIV. NO. 23-00476 JMS-WRP<br><br>ORDER (1) DENYING IN PART MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY, ECF NO. 189; AND (2) DENYING CERTIFICATE OF APPEALABILITY AS TO CERTAIN CLAIMS |

**ORDER (1) DENYING IN PART MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY, ECF NO. 189; AND (2) DENYING CERTIFICATE OF APPEALABILITY AS TO CERTAIN CLAIMS**

## I.  INTRODUCTION

Currently before the court is Defendant-Petitioner Taloa Latu's ("Latu" or "Defendant") pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Petition" or "§ 2255 Motion").  For the reasons discussed below, the court DENIES the Petition in part and DENIES a Certificate of Appealability as to certain claims.  As to the remaining claims, the court will hold an evidentiary hearing.

## II. <u>BACKGROUND</u>

### A.     Factual Background

On June 15, 2017, Latu was indicted for one count of assault resulting in serious bodily injury, taking place on September 11, 2016, inside of Honolulu's Federal Detention Center, a place within the special territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(6).  ECF No. 1.[1]  The indictment alleged that, while incarcerated, Latu intentionally assaulted "JY," who was a co-inmate at FDC.  *Id.* at PageID.2; ECF No. 155 at PageID.1480.  A jury trial commenced on February 12, 2018, and Latu was found guilty on February 14, 2018.  ECF Nos. 83, 90.  Throughout the trial, Latu was represented by Criminal Justice Act ("CJA") counsel Salina Kanai.[2]  On June 27, 2018, after holding an evidentiary hearing, the court denied Latu's Motion for New Trial Based Upon Newly Discovered Evidence.  ECF No. 110.  On August 6, 2018, Kanai filed a Motion for Withdrawal and Substitution of Counsel, which was granted by the court on August 20, 2018.  ECF Nos. 118, 120.  Two days later, CJA counsel Lars Isaacson was appointed to represent Latu, including at his upcoming sentencing hearing.  ECF No. 122.

---

[1]  The § 2255 Motion was filed both in the underlying criminal matter, Cr. No. 17-00364 JMS, and in a separate civil matter, Civ. No. 23-00476 JMS-WRP.  All references to filings in this Order are to the docket in the criminal matter.

[2]  Kanai is now the Federal Public Defender for the District of Hawaii.  At the time of the trial, she was a member of the court's CJA panel and was known as Salina Kanai Althof.

On February 25, 2019, Latu was sentenced to a term of 96 months imprisonment to be followed by a three-year term of supervised release. ECF Nos. 165, 166.[3] The conviction and sentence were affirmed on appeal on August 31, 2022, and the mandate issued on September 22, 2022. ECF Nos. 187, 188.

In his § 2255 Motion, Latu contends that Kanai provided constitutionally ineffective assistance prior to and during trial, and that Isaacson did so during the sentencing phase. Although he raises many issues, Latu primarily argues that Kanai: 1) failed to interview the victim of the assault (referred to in this Order as "JY") and failed to subpoena JY as a witness at trial; and 2) failed to explain to him critical information such as the elements of the offense, the nature of the evidence against him, his sentencing exposure, and his options to plead guilty, including an open plea. Latu claims that he was prejudiced by these failings because: 1) JY would have confirmed his innocence (that is, that Latu has not assaulted JY); and 2) had Kanai provided him with critical information, he would have entered a plea of guilty. Finally, Latu claims that he requested Isaacson to interview JY prior to sentencing, but Isaacson refused to do so. He claims that Isaacson could have presented evidence at sentencing that he was actually innocent, which would have mitigated the sentence imposed.

---

[3] Latu's Total Offense Level 19, Criminal History Category VI, resulted in a Guideline range of 63 to 78 months. ECF No. 167 at PageID.1595. Considering all of the 18 U.S.C. § 3553(a) factors, the court varied upward and imposed a sentence of 96 months.

**B.      Procedural Background**

Latu filed his § 2255 Motion on November 20, 2023.[4]  ECF No. 189.

He also filed a motion seeking an extension of time to file a memorandum in

support of his § 2255 Motion, which the court granted.  ECF Nos. 190, 192.  Latu

then filed that memorandum on January 8, 2024.  ECF No. 196.  The United States

filed a Response on March 25, 2024, ECF No. 200, and Latu filed an optional

Reply on June 4, 2024 (which was wrongly titled as a "Motion for Extension of

Time").  ECF Nos. 205, 205-1.[5]

### III.  STANDARD OF REVIEW

The court's review is governed by 28 U.S.C. § 2255(a), which

provides:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be
> released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the
> sentence.

---

[4]  The §2255 Motion is deemed filed on the date Latu gave it to prison officials for mailing to the court.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (explaining prison mailbox rule).  Here, Latu verified that he provided the § 2255 Motion to prison officials for mailing on November 20, 2023.  *See* ECF Nos. 189 at PageID.1734.

[5]  Prior to filing its Response, the United States sought and obtained an order from this court finding a waiver of the attorney-client privilege with respect to the issues raised in the § 2255 Motion.  ECF Nos. 193, 195.

A court may deny a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b) of the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. § 2255. A court need not hold an evidentiary hearing if the allegations are "palpably incredible" or "patently frivolous or false" or if the issues can be conclusively decided based on the evidence in the record. *Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (internal quotation marks and citation omitted); *see also United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998) (explaining that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief").

Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). "To earn the right to a hearing, therefore, [a petitioner is] required to allege specific facts which, if true, would entitle him to relief." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (citing *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982)). As a result, when "the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive." *United States v. Werle*, 35 F.4th 1195, 1201 n.3 (9th Cir. 2022) (quoting *Blackledge*, 431 U.S. at 82 n.25). Further, "[e]videntiary hearings are particularly appropriate when 'claims raise facts which occurred out of the courtroom and off the record.'" *United States v. Chacon-*

*Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000) (quoting *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989)).

## IV.  ANALYSIS

As set forth above, Latu raises various claims of ineffective assistance of counsel during the pretrial period, during trial, and at sentencing.  The court begins by setting forth the applicable legal standards, and then addresses each argument in turn.

**A.     Legal Standard for Ineffective Assistance of Counsel Claims**

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of a criminal proceeding, including sentencing.  *See United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997).  To prevail on an ineffective assistance of counsel claim, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  That is, the petitioner must show not only that there was a deficiency, but that the deficiency was prejudicial.  *Id*. at 692; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.").  Under the prejudice prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland*, 466 U.S. at 694. "[I]t is unnecessary to consider the prejudice prong of *Strickland* if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998) (citing *Hendricks v. Calderon*, 70 F.3d 1032, 1039 (9th Cir. 1995)).

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690–91. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

Courts "assess a particular decision not to investigate or to limit the scope of investigation for reasonableness." *Waidla v. Davis*, 68 F.4th 575, 585 (9th Cir. 2023). "While a lawyer is under a duty to make reasonable investigations, a lawyer may make a reasonable decision that particular investigations are unnecessary." *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1988). Thus, "[i]n assessing the reasonableness of an attorney's investigation

. . . , a court must consider not only the quantum of evidence already known to counsel but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527; *see also White v. Ryan*, 895 F.3d 641, 670 (9th Cir. 2018).

**B.    Latu's Allegations Against Kanai**

Latu makes several claims of ineffective assistance of counsel against Kanai.  The court breaks these down into two main categories: (1) allegations that Kanai failed to conduct a meaningful investigation based on her failure to interview JY, and her failure to subpoena JY as a trial witness; and (2) allegations that Kanai failed to provide Latu with critical information necessary for him to make informed decisions, including the decision whether to enter a plea of guilty. The court addresses each in turn.

**1.    *Failure to Interview "Various Witnesses" and to Interview and Subpoena JY for Trial***

First, Latu claims that Kanai "failed to question and/or interview various witnesses, including the purported victim [JY], all of whom would have confirmed that the actions alleged in the Indictment did not take place."  ECF No. 189 at PageID.1727.  Latu also argues that "J.Y.'s testimony was the single most important piece of information that the Jury could have heard" and yet Kanai failed to procure JY as a trial witness.  ECF No. 196 at PageID.1768.  As to the allegation that Kanai failed to interview "various witnesses," Latu neither names any such

8

witnesses nor specifies their relation to the incident or what information they could

provide.  This aspect of the claim simply fails as being too conclusory.

*Blackledge*, 431 U.S. at 74.[6]

        And the claim that Kanai was ineffective because she failed to

interview and/or subpoena JY for trial fails for a simple reason—from the date that

Kanai began to represent Latu and throughout the trial,[7] JY was a fugitive, having

absconded from State of Hawaii parole supervision.  As set forth in the

Presentence Investigation Report ("PSR"):

> According to investigators, JY was released from custody
> on parole.  He later absconded from parole supervision,
> and a bench warrant was issued on 06/06/2017.  He
> remained a fugitive until he was arrested on 06/12/2018.
> In response to a victim impact questionnaire, JY reported
> that his jaw was broken in 3 places and the defendant
> "stomped" on his head numerous times during the
> incident.  JY reported that he has memory loss, facial
> expression twitches and migraine headaches as a result of
> the assault.

---

[6]  Latu also claims that Kanai failed to investigate the Bureau of Prison's ("BOP")
preliminary findings regarding the assault.  In fact, there is nothing exculpatory regarding those
findings—whether in their preliminary or final form—and thus Kanai had no reason to
investigate further.  *See* ECF No. 96-1 (BOP incident report materials filed in support of a
Motion for New Trial); ECF No. 145 (transcript of evidentiary hearing and court's ruling from
the bench denying Motion for New Trial based on BOP findings).

[7]  Latu was first represented by the Office of the Public Defender (from June 19, 2017,
through July 13, 2017), then CJA Attorney Anthony Yusi (from July 13, 2017, through October
19, 2017), and then Kanai, who was appointed on October 19, 2017.  *See* ECF Nos. 9, 19, 30.
On August 22, 2018—after trial but before sentencing—Kanai was terminated as counsel and
Isaacson was appointed to represent Latu at sentencing.  ECF No. 122.

PSR ¶16, ECF No. 155 at PageID.1481.[8]  So, from the time that Kanai began representing Latu (October 19, 2017) and throughout the trial (February 14, 2018), JY was a fugitive (from June 6, 2017, through June 12, 2018).  Despite this fact, the FBI attempted to locate JY to serve a trial subpoena, but could not find him.  *See* ECF No. 143 at PageID.1230–1234.  And, more importantly, during a pretrial conference, Kanai informed the court that "my process server is trying to find [JY].  I've asked [the AUSA] to give me some information on where he is, but she does not know, I don't know where he is."  ECF No. 139 at PageID.872.[9]

In short, Kanai could not have been ineffective in failing to interview and/or subpoena a fugitive.  And, despite knowing that JY was a fugitive, Kanai nonetheless made an effort to locate him.  This conduct cannot and does not fall below an objective standard of reasonableness.

## 2.     *Failure to Provide Critical Information*

Latu claims that Kanai failed to inform him of: (1) the elements of the offense; (2) the option to enter an open plea;[10] (3) the potential benefits of entering

---

[8]  Latu did not object to this finding as set forth in the Presentence Report.  *See* ECF Nos. 113, 149.

[9]  Kanai also confirmed with JY's State of Hawaii attorney that JY was "on the run."  ECF No. 200-1 at PageID.1815.

[10]  Latu also states that Kanai failed to engage in "meaningful plea negotiations with the United States."  ECF No. 189 at PageID.1726.  But Latu admits that in fact Kanai did engage in plea discussions (where he would enter a plea but not admit to causing serious bodily injury), but the United States rejected that offer.  ECF No. 196 at PageID.1754–1755.  Further, in his declaration, Latu states that "[t]hough I do not know for certain, I believe that [Kanai] reached

(*continued…*)

a plea; (4) the sentencing exposure faced by proceeding to trial; and (5) the government's ability to prove its case without a statement from JY, JY's testimony, or visual proof of Latu committing the assault.  He further claims that Kanai failed to request a jury instruction relating to self-defense, motive, and the definition of "serious assault" under the law, and had she done so, he would have entered a plea of guilty.

Several of these allegations plainly fail.  First, there was no basis in law for the court to instruct the jury on self-defense.  The court clearly recalls the trial evidence was overwhelming that Latu assaulted JY and that he did so with no warning and without provocation.  *See also* PSR ¶ 8, ECF No. 155 at PageID.1480 (explaining that while JY was playing cards, Latu entered the room and "immediately struck JY with his fists . . . .").  To be entitled to a self-defense jury instruction, a defendant must make a prima-facie case by offering evidence to show: (1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force; and (2) the use of no more force than was reasonably necessary in the circumstances.  *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006); *United States v. Urena*, 659 F.3d 903, 906–

---

out to the United States on my behalf for the purposes of trying to secure a plea agreement."
ECF No. 196-1 at PageID.1774.  And in a November 30, 2017 letter from Kanai to Latu, Kanai
recounted the status of plea discussions, and that Latu "indicated that [he] did not wish to pursue
any further plea negotiations and would rather take your chances at trial."  ECF No. 200-1 at
PageID.1819.  Thus, Latu's claim that Kanai failed to engage in meaningful plea discussions
with the United States is proven wrong by Latu's own admission as well as Kanai's November
30, 2017 letter.

07 (9th Cir. 2011).  Here, no such prima facie case was made—Latu was not entitled to a self-defense instruction, and thus Kanai could not have been ineffective in failing to request one.  Further, because "motive" was not an element of the charged offense, *see* ECF No. 86 at PageID.381 (Court's Jury Instruction No. 15), there was no basis for Kanai to ask for such an instruction.  *See United States v. Irizarry*, 341 F.3d 273, 304 (3d Cir. 2003).[11]  Finally, although Latu appears to argue otherwise, the court included in its jury instructions the legal definition of the meaning of "serious bodily injury."  ECF No. 86 at PageID.381 (defining serious bodily injury as "bodily injury that involves (1) extreme physical pain; or (2) protracted loss or impairment of the function of a body part or organ").

Second, a November 30, 2017 letter from Kanai to Latu confirms that Kanai explained the sentencing guidelines to Latu, including the guideline ramifications depending on whether Latu pleads guilty or is found guilty at trial, and that Kanai estimated that he would fall into criminal history category VI, although he was "likely not a career offender."  ECF No. 200-1 at PageID.1819–1820.  Thus, Latu's claim that Kanai did not inform him of sentencing exposure is simply not accurate—the November 30, 2017 letter proves otherwise.

---

[11]  Although Latu was not entitled to a "motive" jury instruction for the charged offense, Kanai's closing argument raised the lack of evidence of motive as proof of reasonable doubt.  ECF No. 144 at PageID.1365 ("Speaking of motive to assault, did you hear any evidence that the government presented that Latu had some sort of motive to assault [JY]?  I didn't.  No one is saying the government has to prove motive.  That's not in your instructions.  They don't have to prove motive, but the lack of motive, the lack of any explanation, that can be reasonable doubt.").

As to Latu's other allegations against Kanai, including that she failed to inform him of the elements of the offense, the option—and possible benefits—of entering an open plea, and the government's ability to prove its case without JY, the court cannot decide the § 2255 Motion solely on the papers.  And, at this stage, the court cannot determine whether Latu would have entered a plea of guilty had this information been provided.  Rather, although Kanai denies these allegations, when "the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive."  *Werle*, 35 F.4th at 1201 n.3.

## C.      Latu's Allegations Against Isaacson

Latu claims that he instructed Isaacson, in preparation for sentencing, to contact JY,[12] and that "introduction of a statement or even potentially testimony from J.Y. at sentencing would have served as powerful mitigation evidence and played a role in the Court's decision-making process."  ECF No. 196 at PageID.1768.  This argument is premised, at least in part, on a letter that JY purportedly wrote, well after his sentencing, that states "Mr. Latu did not hit me, I slip and fell in my cell!"  ECF No. 196-2.  This claim lacks any merit.

Beginning with an overview of various statements made by JY is helpful.  During his initial interview, JY stated that he received his injuries from

---

[12]   JY was arrested on a parole warrant on June 12, 2018, and thus he was no longer a fugitive prior to Latu's February 25, 2019 sentencing hearing.  PSR ¶ 16, ECF No. 155 at PageID.1481.

falling off his bunk.  He then changed his story, stating that "he was playing cards in the education room, and the next thing he remembered was waking up on the floor having been assaulted.  He denied seeing anyone approach him."  PSR ¶ 11, ECF No. 155 at PageID.1480.  During an August 28, 2016 statement to investigators, JY again stated that he was playing cards, and next recalled waking with the injuries.  PSR ¶ 13, *id*. at PageID.1481.  But in response to the victim impact questionnaire used for sentencing, JY stated that Latu "stomped" on his head numerous times, that "his jaw was broken in 3 places," and that he is terribly afraid of Latu.  PSR ¶¶ 16, 18, ECF No. 155 at PageID.1481–1482.  Then, *after* sentencing, JY provided a purported statement claiming that Latu had not assaulted him.  ECF No. 196 at PageID.1757; ECF No. 196-2.

Isaacson denies that Latu ever asked him to interview JY prior to sentencing.  *See* ECF No. 200-2 at PageID.1833–1836.  But Isaacson also states that even had he been asked, "I would have had great hesitation in presenting such evidence/arguments, frivolous in my view, to the court in fear of angering the trial judge, resulting in a higher sentence for Mr. Latu."  *Id*. at PageID.1836.

First, Latu's request for the court to consider JY's post-sentencing letter as evidence of ineffective assistance of counsel is misplaced.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

14

time." *Strickland*, 466 U.S. at 689.  At the time of sentencing, Isaacson was aware that JY had made conflicting statements, ranging from a denial that he was assaulted, to an admission that he was assaulted but did not know who assaulted him, to an admission that Latu assaulted him.  The final statement from JY was made *after* sentencing, and the court will not evaluate counsel's conduct based on hindsight.

Further, the evidence against Latu was overwhelming.  Had Isaacson presented JY (or a statement by JY) at sentencing, and had JY disavowed Latu's involvement in the assault, the court would certainly have rejected such a claim. And Isaacson is correct—presenting exculpatory evidence at sentencing that contradicts the jury's verdict and the clear trial evidence may have resulted in a greater, not lesser, sentence.  Although a lawyer is under a duty to make reasonable investigations, here, Isaacson (to the extent Latu made a request of him) made a reasonable determination that any further investigation into JY's version of events was unnecessary, and in fact potentially harmful.  *Babbit*, 151 F.3d at 1173.  In other words, based on the evidence known to Isaacson at the time, there is nothing in the record to suggest that a reasonable attorney would investigate JY further.[13]

---

[13] *Cf.* ECF No.200-1 at PageID.1824 (August 8, 2018 letter from Kanai to Latu explaining why she believed there was no good faith basis to file a new trial motion based on JY's new statement—"the victim impact statement . . . hurts you, rather than helps" and "I spoke with the victim's state attorney, and he reiterated much of what was said in the victim impact statement and that his client would not be recanting his statement").

*Wiggins*, 539 U.S. at 527; *see also White*, 895 F.3d at 670.  Under these circumstances, counsel made a "reasonable professional judgment" to direct his efforts elsewhere.[14]  *Strickland*, 466 U.S. at 690.

## V.  CERTIFICATE OF APPEALABILITY

In denying the Petition, the court must also address whether Latu should be granted a certificate of appealability ("COA").  *See* Rule 11(a) of the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. § 2255 (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant").  A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient."  *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011).  The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further."  *Id*. (internal quotation marks and footnote omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that a certificate of appealability

---

[14]  Isaacson—quite appropriately in the court's view—centered his sentencing arguments on two issues: 1) convincing the court that Latu was not a career offender under the Guidelines; and 2) trying to convince the court not to vary upward.  *See, e.g.*, ECF Nos. 156, 161.  Isaacson succeeded in the first, but not on the second.

should issue only if a prisoner shows, among other things, "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling").  The standard "requires something more than the absence of frivolity, but something less than a merits determination."  *Hayward*, 603 F.3d at 553 (footnote and internal quotation marks omitted).

The court carefully reviewed Latu's assertions and gave him every benefit by liberally construing them.  Latu had the opportunity to explain his assertion in response to the Government's Opposition.  Based on the above analysis, and considering all of the allegations in Latu's Petition and Response, the court finds that reasonable jurists could not find the court's ruling denying Latu's § 2255 Motion in part to be debatable.  Accordingly, a COA is DENIED as to those claims denied in this Order.

## VI.  CONCLUSION

For the foregoing reasons, the court DENIES Latu's § 2255 Motion in part, as set forth above, and DENIES a Certificate of Appealability as to this denial.

As to the remaining claims for which an assessment of credibility is required (including that Kanai failed to inform Latu of the elements of the offense, the option—and possible benefits—of entering an open plea, and the government's ability to prove its case without JY), the court will appoint counsel for Latu and

17

hold an evidentiary hearing.[15]  The court will notify counsel by separate order as to further procedures in that regard.  To be clear, the evidentiary hearing will be limited to the Latu's claims not dismissed by this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 17, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Latu*, Cr. No. 17-00364 JMS, Civ. No. 23-00476 JMS-WRP, Order (1) Denying in Part Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 189; and (2) Denying Certificate of Appealability as to Certain Claims

---

[15]  Once a court determines that an evidentiary hearing is warranted, "the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Rule 8(c) of the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. § 2255.